# THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAQUONE LAKEEM COLLINS, #353-719,    *

Plaintiff    *

v    *    Civil Action No. PWG-18-1908

DR. SHARON L. BAUCOM,    *
WEXFORD HEALTH SOURCES, INC.,
MAHBOOB ASHRAF, MD,    *
ROBUSTIANO BARRERA, MD,[1]
PEGGY MAHLER, NP,    *
JENNIFER D. VANPELT, RN,
WARDEN RICHARD J. GRAHAM, JR.,    *
DAYENA M. CORCORAN,
STACIE MAST, RN,    *
DR. ADAORDA ODUNZA,
    *

Defendants

## MEMORANDUM OPINION

Plaintiff Jaquone Lakeem Collins, representing himself in this suit, is an inmate at North Branch Correctional Institution ("NBCI"). He has filed a Complaint seeking money damages[2] and asserting civil rights violations under 42 U.S.C. § 1983 by prison health care provider Wexford Health Sources, Inc. ("Wexford") and Wexford employees Mahboob Ashraf, M.D.; Robustiano Barrera, M.D.; nurse practitioner Peggy Mahler; and registered nurses Stacie Mast and Jennifer D. VanPelt (the "Medical Defendants").[3] Essentially, he claims the Medical Defendants violated the

---

[1] The Clerk shall amend the docket to reflect the proper spelling of Dr. Barrera's surname.

[2] In addition to seeking $3,000,000, Collins requests a "court order for a policy improvement with regard to treatment of prisoners, for the private healthcare contractor (and successor) and for the Department of Public Safety and Correctional Services." Compl. 6, ECF No. 1.

[3] During the time covered by the Complaint, and prior to January 1, 2019, Defendant Wexford was a private health care provider under contract with the Maryland Department of Public Safety and Correctional Services ("DPSCS") to provide primary health care services and utilization

Eighth Amendment by disregarding his complaints of a painful inguinal hernia[4] for two years before he was provided corrective surgery. The Complaint also names various state employees: Dr. Sharon L. Baucom, chief medical director for the Department of Public Safety and Correctional Services ("DPSCS"); Richard J. Graham, Jr., warden of Western Correctional Institution ("WCI"); former DPSCS Commissioner Dayena M. Corcoran; and Dr. Adaora Odunza, DPSCS's director of nursing (collectively, the "State Defendants"). Collins asserts that Baucom failed to implement training concerning treatment of hernias; that Graham failed to personally address Collins's grievances concerning the problem and instead delegated investigation of the matter to an assistant warden who denied the administrative remedy procedure ("ARP") grievance; that Corcoran dismissed Collins's appeal of the ARP; and that Odunza did not implement new "ghost policies" concerning the timely treatment of hernias. *See* Compl. 5-6. Collins states his complaints of pain received little or no response, specifically noting that during his July 1, 2017 visit with a registered nurse he was told to submit another sick call slip to address his hernia pain with another provider. *See id.* at 3. Collins also claims that he was seen by Defendant Barrera on July 10, 2017, and that Barrera ignored his complaint of pain, stating "he had somewhere to be." *Id.*

---

management services for Maryland prisoners. On January 1, 2019, another health care provider commenced a new contract with DPSCS. *See* Press Release, Corizon Health, Corizon Health to Partner with the State of Maryland (Dec. 20, 2018), http://www.corizonhealth.com/Corizon-News/corizon-health-to-partner-with-the-state-of-maryland.

[4] "An inguinal hernia occurs when tissue, such as part of the intestine, protrudes through a weak spot in the abdominal muscles. The resulting bulge can be painful, especially when [the individual] cough[s], bend[s] over or lift[s] a heavy object. Mayo Clinic, Inguinal Hernia, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/syc-20351547 (last viewed June 3, 2019). Although not necessarily dangerous, an inguinal hernia does not improve on its own and can become life-threatening if the contents of the hernia become trapped ("incarcerated") in the abdominal wall, causing strangulation which cuts off the blood flow to the trapped tissue. *See id.* Signs of strangulation include nausea, vomiting, fever, sudden intensifying pain, a red, purple or dark bulge, or the inability to move the bowels or pass gas. *See id.* Surgery (herniorrhaphy) is recommended to fix an inguinal hernia that is painful or enlarging. *See id.*

In response to the Complaint, both the Medical Defendants and the State Defendants have filed motions to dismiss or, alternatively, for summary judgment, ECF Nos. 22, 29, accompanied by affidavits and exhibits. Collins was advised of his right to respond and oppose the dispositive motions (ECF Nos. 23, 30) and has done so, ECF Nos. 27, 35, prompting a reply filed by the Medical Defendants (ECF no. 28).[5]

The motions may be decided without a hearing. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, the Medical Defendants' motion, construed as a motion to dismiss, is granted in part and denied in part. The State Defendants' motion, likewise construed as a motion to dismiss, is granted. As for Collins, his motion to compel discovery (ECF No. 39) is denied as moot, while his motion to appoint counsel (ECF No. 36) will be granted.

## BACKGROUND

On February 6, 2016, Collins placed a sick call request after noticing a bulge below his waist line near the pubic area. Compl. 2. The bulge was eventually diagnosed as a hernia. *See id.* Collins underwent surgery for the condition on March 8, 2018. *See id.* at 4. The dispute in this case centers on Collins's dissatisfaction with pain relief provided after his hernia diagnosis and the length of time between the date of diagnosis and surgical intervention, which Collins contends violated Wexford's clinical guidelines and other treatment protocols.[6] Collins also alleges that

---

[5] Defendants Wexford, Ashraf, Mast, and Mahler previously responded to an Order to Show Cause after Collins requested emergency injunctive relief seeking pain medication for unrelated medical issues, including a sickle cell anemia flare and a fractured hand. *See* ECF Nos. 15, 17, 18. As adequate treatment had been rendered, preliminary injunctive relief was denied by an order dated September 24, 2018. ECF No. 19.

[6] Attached to the Complaint is a February 22, 2018 letter to Defendant Baucom from Amy Cruice, legal program manager for the American Civil Liberties Union Foundation of Maryland, concerning Collins's hernia repair. ACLU Letter, ECF No. 1-3. In relevant part, the letter references the ACLU's 2009 involvement with Baucom, then-Commissioner Gary Maynard, and

Defendant Ashraf misdiagnosed his condition as an abdominal hernia during a January 31, 2017 visit, as evidenced by the record notation and the ordering of an abdominal binder (waist band). *See* Compl. 3. In his opposition response, Collins contends that the conservative treatment rendered in accord with Wexford's "watch and wait" policy places prisoners at risk of "grave injury or death" and subjects them to "significant" pain while awaiting the outcome. Pl.'s Nov. 2018 Opp'n 2, ECF No. 27-1; *see* Wexford Outpatient Clinical Guidelines, ECF 1-19 ("The Repair of Abdominal Wall/Inguinal Hernias"). Collins contends that he should have received surgery immediately after he first complained of pain on September 30, 2016, and further states that when

---

other DOC personnel in developing treatment plans and standards of health care for Maryland prisoners, and sets forth the following information:

> In 2008, Mr. [Cornelius H.] Woodson stated in an email to the ACLU . . . that the decision of whether to approve surgery "is determined by the standards of Activities of Daily Life Community Standards and has been amended to include the severity of pain and discomfort." In your email to David Rocah on July 28, 2009 . . . , it was clear that if a prisoner's hernia causes pain that interferes with daily activity, the conservative treatments should be reassessed.

> Most recently, we contacted you in 2016 about a prisoner suffering from a hernia, who was released shortly after we sent our letter but before he received surgery. In response to our 2016 letter, DPSCS Director of Nursing Adaora Odunze emailed to us Wexford's clinical guidelines on general surgery for hernias and the InterQual Clinical Evidence Summary for Hernia, Inguinal and Femoral. While Wexford's guidelines say absolutely nothing about the consideration of pain in devising a treatment plan, the InterQual document clearly states that "[r]eferral to a surgeon for evaluation and treatment is appropriate when the diagnosis of a hernia is made" and that "[t]he treatment for a groin hernia is surgical repair." It goes on to explain that "watchful waiting is an acceptable alternative for asymptomatic or minimally symptomatic patients with inguinal hernias." The InterQual document also warns that "severe pain is uncommon and suggests incarceration or strangulation." However, as described below, Mr. Collins was not referred to a surgeon upon diagnosis, and he has been reporting pain and other debilitating symptoms for more than a year.

*See id.* at 1-2. Presumably, Collins' claims against Baucom and Odunze are premised on his assumption that Baucom and Odunze were required to monitor Wexford's compliance with these guidelines.

surgery was recommended on October 3, 2017, he exercised his "right for a second opinion" when declining to have the surgery performed at Bon Secours Hospital. Pl.'s Nov. 2018 Opp'n 3-4.

## STANDARD OF REVIEW

In their motions, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the Complaint must allege enough facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Where Defendants have submitted numerous exhibits with their motion, the Court may consider such evidence only if it converts the motion to one seeking summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Under Federal Rule of Civil Procedure 56, summary judgment is granted if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the district court must view the facts in the light

5

most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson*, 477 U.S. at 248, and a dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party, *id.*

## DISCUSSION

### I.    The Medical Defendants

The Medical Defendants move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They move, in the alternative, for summary judgment under Rule 56.

Rule 12(d) gives a district court discretion to treat a motion to dismiss as a motion for summary judgment under certain circumstances. See Fed. R. Civ. P. 12(d); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997). If, as it happens, the court opts to construe the motion as one for summary judgment, the rule requires the court to give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Starnes v. Veeder-Root*, No. 15-1002, 2017 WL 913633, at *2 (M.D.N.C. Mar. 7, 2017).

Here, the Medical Defendants' motion expressly sought summary judgment in the alternative and was accompanied by a number of exhibits. Collins, accordingly, was on notice that the motion could be treated as a motion for summary judgment. *See Tsai v. Md. Aviation*, 306 F.

App'x 1, 4 (4th Cir. 2008). In my view, though, it remains questionable whether he has had a "reasonable opportunity" to present material in opposition to the motion.

"[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)). Collins is an inmate and is unrepresented in this case. He has filed a motion for discovery (ECF No. 39), to which he has attached a letter that states, in a single sentence, "I do not know what I'm doing." ECF No. 39-1. In his opposition to Medical Defendants' motion, he implores the Court to grant him "a fair opportunity" to take his case to trial, noting that he "is a lay person of the law" and is relying "solely on limited resources." Pl.'s Nov. 2018 Opp'n 4. The document is unaccompanied by exhibits, save for a trio of documents he had previously enclosed along with his Complaint. *See* ECF Nos. 27-2 to -4. While I will not go so far as to state that I could not treat the Medical Defendants' motion as a motion for summary judgment, I am inclined under the circumstances to exercise my discretion to construe the motion solely as a motion to dismiss. To the extent, then, that the motion seeks summary judgment under Rule 56, the motion will be denied without prejudice,[7] with the understanding that the Medical Defendants may renew their motion following the conclusion of discovery.

---

[7] Collins, after filing his response in opposition to the defendants' dispositive motions, moved to compel discovery. ECF No. 39. I am denying his motion as moot in light of this Memorandum Opinion and its accompanying Order, as Collins will now have an opportunity to pursue discovery.

The Medical Defendants, meanwhile, have moved to strike a first set of interrogatories, received February 5, 2019, as untimely and not permitted under the Local Rules. Mot. to Strike 1-2, ECF No. 38. I agree that Collins's pursuit of discovery in the absence of a Scheduling Order was premature. *See* Loc. Rule 104.4 (D. Md. 2018) ("[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered."). The Motion to Strike (ECF No. 38) is therefore granted.

I will next consider the Medical Defendants' arguments for dismissing the Complaint under Rule 12(b). These are: (a) the claims against Wexford fail because the doctrine of *respondeat superior* does not apply to § 1983 claims, (b) the Medical Defendants are entitled to qualified immunity as state actors, and (c) the Complaint fails to plead an actionable Eighth Amendment claim. I will address each argument in turn.

### A.      Wexford

Under § 1983, liability is imposed on any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety and Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (per curiam). Wexford, a corporation, may not be held liable for damages based on the assertions raised in the Complaint, and is therefore dismissed with prejudice from this action.

### B.      Qualified Immunity

The individual Medical Defendants move to dismiss the Complaint on the basis of qualified immunity. They argue that they are not government officials but instead provided medical services to Collins through a contract between their employer and DPSCS. They rely, by way of analogy, on *Filarsky v. Delia*, 566 U.S. 377 (2012), in which the Supreme Court held that private individuals

may assert qualified immunity when they are "retained by the [government] to assist [in a task for which] government employees performing such work are entitled to seek the protection of qualified immunity." 566 U.S. at 393-94. They cite no authority that *Filarsky* has been extended to contractual mental health care providers working in correctional facilities. Moreover, even if the individual Medical Defendants were entitled to assert qualified immunity, the right at issue in this case is a clearly established right. Knowingly denying appropriate medical care for a prisoner's serious health need violates clearly established constitutional rights of which a reasonable person would have known. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). Here the Complaint sufficiently raises a genuine issue of material fact, and the right at issue was clearly established at the time. Therefore, even if legally permitted to seek the protection of qualified immunity, the individual Medical Defendants do not demonstrate that the circumstances of this case entitle them to it.

### C. Eighth Amendment

The Eighth Amendment, as incorporated by the Fourteenth Amendment, prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to

deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

"[D]eliberate indifference requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* at 696 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In cases like this, there must be a showing that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). The subjective component is satisfied only where a prison official "subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at

10

106; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. The reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). The patient's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Here, the Medical Defendants argue that Collins's "allegations do not rise to the level of deliberate indifference as required under Section 1983." Medical Defs.' Mem. 7, ECF No. 22-1. Specifically, they say, the Complaint fails to allege that "any one of the individual Defendants had actual knowledge of a serious medical need to which they were deliberately indifferent." *Id.* Further, they contend Collins has not "provided any facts demonstrating that Defendants' treatment was 'grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds as recognized by Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017)).

I agree with the Medical Defendants that Collins has not stated a claim against Nurse Mast. Collins met with Nurse Mast on two occasions in 2016. See Compl. 2-3. The Complaint acknowledges that at the time of the first visit, in February 2016, the bulge below his waist was "slight" and he was not experiencing pain. *See id.* at 5; ECF No. 1-6. Nevertheless, Nurse Mast referred him to chronic care. *See* ACLU Letter 2. By the time of the second visit, in September

2016, the bulge had grown, and Collins had begun to experience pain, *see* Compl. 2, but, again, Nurse Mast was hardly indifferent. Rather, her write-up of the visit, which Collins attached to the Complaint, shows she referred him to a provider for further evaluation of a possible hernia and, moreover, that Collins "voiced understanding and no other concerns." ECF No. 1-8. These allegations do not support a plausible Eighth Amendment claim against Nurse Mast. Accordingly, the claim against this particular defendant must be dismissed without prejudice.

I also agree with the Medical Defendants that the Complaint fails to state a claim against Nurse Practitioner Mahler. The sole allegation against her is that she "denied the plaintiff treatment for pain." Compl. 6. But the Complaint acknowledges that the reason she did not issue medication to Collins was not indifference to his condition; it was, rather, that he was already receiving medication (Tramadol) for pain associated with his sickle cell anemia. *See id.* at 3, 6. Her writeup of the visit, also attached to the Complaint, runs three pages and shows she conducted a thorough examination. *See* ECF No. 1-20. As nothing in the Complaint permits a reasonable inference that Nurse Practitioner Mahler was deliberately indifferent to Collins's medical needs, I am dismissing the claim against her, also without prejudice.

By contrast, I do not agree that Collins has failed to state a claim against the other individual Medical Defendants: Drs. Ashraf and Barrera and Nurse VanPelt. Broadly speaking, the Complaint alleges that Collins disclosed his condition and discussed his discomfort during his visits with these defendants in 2017. *See* Compl. 2-3. Nevertheless, it asserts, each of these defendants showed at least some disregard for his concerns, and none issued medication for his pain. *See id.* at 2-5.

Collins's allegations against these defendants are particularized in several respects. For instance, he accuses Dr. Ashraf of misdiagnosing his condition and ordering an ineffective

treatment – specifically, an "abdominal binder[,] which is no more than an elastic waist band" – while failing to prescribe medication to treat his pain. *See id.* at 3. He alleges nurse VanPelt later "disregarded" the complaints he raised during the July 2017 sick call visit "and told [him] to submit another sick call [request]." *Id.* Her inaction, according to the Complaint, "contributed a delay in treatment and it exacerbated the plaintiff's injury and unnecessarily prolonged his pain." *Id.* at 5. Nine days later, the Complaint says, Dr. Barrera similarly "disregarded [his] complaint of pain and discomfort," saying he "had somewhere to be." *Id.* at 3.

These responses, according to the Complaint, so frustrated Collins that he sought help from the American Civil Liberties Union Foundation of Maryland. *See id.* at 4. In its February 2018 letter to DPSCS's chief medical director – a letter Collins attached to his Complaint – that organization noted that more than four months had passed since a nurse practitioner referred Collins for a surgical consultation, yet Collins was continuing to await surgery. *See ACLU Letter* 1. The letter states that Collins had "seen the doctor at least three times since the referral, and continues to complain of extreme pain." *Id.*

Accepting these allegations as true, I am satisfied that Collins's § 1983 claims against Drs. Ashraf and Barrera and Nurse VanPelt are adequately pleaded. As to these defendants, the Motion to Dismiss is denied.

## II. The State Defendants

As I have already noted, it is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). State Defendants Baucom, Graham, and Odunze argue that they cannot be liable for the conduct of contractual health care providers not subject to their supervision or control. *See* Decl. of Sharon

Baucom, M.D. ¶ 1, ECF No. 29-2; Decl. of Richard J. Graham ¶ 2, ECF No. 29-3; Decl. of Adaora Odunze, RN, MS, DrPh ¶ 1, ECF No. 29-4.

Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Collins has not made a showing to this effect.

Graham further argues that the denial of Collins's administrative grievances by an assistant warden, without more, does not establish a basis to hold Graham responsible as for the actions of medical personnel not subject to his supervision. This argument is correct. *See Atkins v. Maryland Div. of Corr.*, No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("The mere fact that [a warden] denied [the plaintiff's] grievances does not alone impose liability."); *Scott v. Padula*, No. 08-3240-HFF-PJG, 2010 WL 2640308, at *3 (D.S.C. June 14, 2010) ("Without more, allegations of a failure to investigate an issue, a failure to process a grievance, or a denial of a grievance are insufficient to establish personal involvement by a defendant in the deprivation alleged."), *report adopted by* 2010 WL 2640303 (D.S.C. June 30, 2010), *aff'd*, 423 F. App'x 310

14

(4th Cir. 2011); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983").

The State Defendants are not responsible for the delivery of health services to Collins and are therefore dismissed from this lawsuit.[8]

### III.    Appointment of Counsel

After Collins opposed Defendants' dispositive motions, he moved for appointment of counsel based on his status as an incarcerated litigant. Mot. to Appoint Counsel, ECF No. 26. Citing a lack of financial resources, Collins stated he was unable to find an attorney willing to provide assistance, that his case presents complex medical issues, and that resolution of the case will require discovery. *See id.*

My power as a federal district court judge to appoint counsel under 28 U.S.C. § 1915(e)(1)[9] is discretionary and may be exercised where an indigent claimant presents exceptional circumstances. *See Branch v. Cole*, 686 F.2d 264, 265 (5th Cir. 1982) (per curiam); *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975). Absent exceptional circumstances, there is no absolute right to appointment of counsel. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Such circumstances may exist in cases where a "pro se litigant has a colorable claim but lacks the capacity to present it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (quoting *Gordon v. Leeke*, 574 F.2d 1147, 1173 (4th Cir. 1978)), *abrogated on other grounds by Mallard v. U.S. Dist. Court*, 490 U.S. 296, 298 (1989).

---

[8] Because the State Defendants are entitled to dismissal on other grounds, their claim for qualified immunity will not be addressed.

[9] Under § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel."

As this case is proceeding and entering discovery, I find the circumstances have changed sufficiently to warrant the appointment of pro bono counsel. I am therefore exercising my discretion to appoint pro bono counsel to assist Collins as he pursues his remaining claims.

## CONCLUSION

This case will proceed, but in a streamlined form. The Medical Defendants' motion (ECF No. 22), construed as a motion to dismiss, is granted in part and denied in part. The claim against Wexford is dismissed with prejudice. The claims against Nurse Mast and Nurse Practitioner Mahler are likewise dismissed, but without prejudice. The State Defendants' motion (ECF No. 29), also construed as a motion to dismiss, is granted.

Moving forward, Collins will have the opportunity to pursue his § 1983 claims against Drs. Ashraf and Barrera and Nurse VanPelt. Collins's motion for appointment of counsel (ECF No. 36) is granted. His motion to compel discovery (ECF No. 39) is denied as moot.

A separate order follows.

Date:

_____
Paul W. Grimm
United States District Judge